## Daniels v. Everett

*Harry F. Lee* and *Arlington W. Williams,* for plaintiffs.

*Robinson & Hoffner,* for defendants.

DAVIS, P. J., March 2, 1966.—Plaintiffs, Elmer J. Daniels and his wife, Leila H. Daniels, have brought this action in equity to restrain defendants, William John Everett and his wife, Jean E. Everett, from erecting on defendants' premises a two-story structure comprising a garage on the first floor and an "apartment" on the second floor. The complaint alleges that such a structure would be in violation of a building restriction contained in the deed by which defendants acquired title to their property. The case now comes before this court on defendants' preliminary objections in the nature of a demurrer to the complaint.

Defendants occupy and own a dwelling which stands on one of three lots conveyed to them by William Sprinzing and Elsie Sprinzing, his wife, by deed dated May 15, 1963, and recorded in the office for the recording of deeds, etc., for the County of Monroe, at Stroudsburg, Pa., in deed book vol. 308, page 1142, incorporated by reference. This lot adjoins plaintiffs' lot, and both lots are located on the north side of Price Drive at Buck Hill Falls in Barrett Township, Monroe County, Pa., in a residential area. Said deed contains the following conditions and restrictions:

"(1) That no building shall be erected on said described premises within a distance of forty feet from 'Price Drive'. This, however, shall not apply to an open porch.

"(2) That said premises shall at all times be used

for *residential purposes only* and *no outbuilding* shall be erected thereon *except a private garage* to be used in connection with *any* dwelling house erected on said premises.

"(3) That no building shall be erected on said premises that costs less than Thirty Five Hundred Dollars to construct the same.

"(4) That no livestock or poultry shall be kept on the above described premises". (Italics supplied).

The foregoing restrictions were created and imposed by Allen S. Price and Lucille Price, his wife, in their deed of the premises to defendants' grantors, William Sprinzing and Elsie Sprinzing, his wife, dated December 6, 1950, and recorded in deed book vol. 178, page 212. The attention of the parties in this case is directed solely to restriction no. 2; but we have quoted the other three restrictions in order to present a complete background for the question at issue.

The conflict here presented arises because defendants have undertaken to erect two permissible types of structure in the form of a single, integrated apartment-garage building. An "apartment", per se, is a structure "for residential purposes" which in no way violates restriction no. 2. In Macy v. Wormald, 329 S. W. 2d 212 (Ky., 1959), defendants proposed to erect a four-unit apartment house on premises which were subject to the following restriction: "Said lots shall be used only for *residence purposes,* and *only one* residence shall be erected upon each lot . . ." (Italics supplied). The Court of Appeals of Kentucky held that apartments are residences, but that defendants should not be permitted to erect more than one. Such a numerical limitation was absent (as it is likewise absent in the instant case) in Gagliardi v. Shender, 28 D. & C. 2d 164 (C. P. No. 2, Philadelphia Co., 1962). There, the deed provided; "[N]o . . . buildings . . . erected on the above described tract . . . shall be used for any other

purpose whatever except as for private dwellings *or residential purposes* and the necessary usual outbuildings. . . ." (Italics supplied.) The court held that this language did not prohibit the erection of an 11-unit apartment house. Turning next to garages, we find that a private garage for many years has been regarded in Pennsylvania as being entirely compatible with a restriction to "residential purposes". In Smyth v. McCarroll, 76 Pa. Superior Ct. 142 (1921), the Superior Court affirmed the refusal by the lower court to enjoin the erection of a private garage alleged to be in violation of a restriction which read: "[N]o building except for *residence purposes* shall ever be built upon said premises. . . ." (Italics supplied.) In the instant case, restriction no. 2 expressly permits, by way of exception, the erection of a private garage, and comprehensively prohibits the erection of all types of "outbuilding", regardless of what purposes they may be designed to serve.

Counsel for plaintiffs assert that restriction no. 2 prohibits the erection of a combination apartment-garage and, in support, present the following line of reasoning: (1) a private garage is a permissible "outbuilding"; (2) the addition of a second story apartment to a first story garage converts the garage into a structure which is something more than, and different from, a private garage; and, therefore, (3) such a structure must fall within the category of "other types of outbuilding" proscribed by restriction no. 2. This argument is based upon the mistaken assumption that an outbuilding, when integrated with a residence, imposes its own character upon the latter with the result that the combination of the two together becomes an "outbuilding". Analysis of the meaning of that word will show that this assumption is not tenable. Webster's New International Dictionary (2d Edition, Unabridged) gives the following definitions:

"Outbuilding . . . A building separate from, and subordinate to, the main house; an outhouse.

"Outhouse . . . 1. A small building near the main house; an outbuilding. Specif., *U. S.*, a privy.

"2. *Law*. A building subsidiary or appurtenant to a main building or house, usually within the curtilage".

Two necessary elements are implicit in the meaning of the word "outbuilding": (1) the existence of some other structure which is architecturally distinguishable from the subject building; and (2) a relationship between the two structures in which the subject building serves some subordinate purpose or function of the principal building. Where either or both of these elements are absent, the structure in question cannot be an "outbuilding". As to the first element, it is not required that the structures be distinguished by actual physical separation. A garage which is attached in mere makeshift fashion to a dwelling is still an "outbuilding" which is subject to building restrictions applicable to that type of structure: Crowl v. McDuffie, 134 So. 2d 542 (Fla. App., 1961); Bruce v. McClees, 158 Atl. 849 (Ct. of Chancery, N. J., 1932). On the other hand, a garage which is architecturally integrated with a dwelling becomes a part thereof and is not subject to restrictions relating to "outbuildings". In Murtha v. McGarry, 164 Atl. 698 (Ct. of Chancery, N. J., 1933), defendant had erected a one-story addition on the side of her house for use by the occupants of the house as a private, single car garage. The roof of the addition was designed and used as an upstairs sun porch, with access from a doorway or French window constructed in the wall of the main house for that purpose; the interior of the addition was heated from the main house through windows, one of which was to be enlarged into a doorway to be used for access directly into it from the adjoining room in the house as originally constructed. Plaintiffs sought an order en-

joining the structure and cited a building restriction which provided: "necessary and suitable garages and outbuildings may be erected on the rear of the lot". The court dismissed the bill, and Vice Chancellor Buchanan said:

"The addition therefore not only appears to be, but in fact is, a part of the dwelling house. It is not a mere abutting outbuilding as was the case in Rothholz v. Stern, 97 N. J. Eq. 189, 127 A. 97, and in Bruce v. McClees, 110 N. J. Eq. 92, 158 A. 849, and hence does not come within the proscription of the covenants against another building, a building other than the dwelling house building erected elsewhere than on the rear of the lot": 164 Atl. 698 at page 698.

The Murtha decision was followed in Grossman v. Abate, 19 N. J. Super. 516, 88 A. 2d 658 (1952), where Judge Haneman said:

"That a garage or stable may be incorporated as an integral part of a residence, where like phraseology in a restrictive covenant was used, is supported not only by Murtha v. McGarry, supra, but also by Bruce v. McClees, 110 N. J. Eq. 92, 158 A. 849 (Ch. 1932), affirmed 112 N. J. Eq. 172, 164 A. 14 (E. & A. 1932). In this latter case, although the court found that the garage was not an integral part of the main residence building, the law was clearly stated, so that when applied here, it must lead to the conclusion that the garage and outdoor living room are a part of the main residence building.

"It is therefore held that the set-back restriction providing that no portion of a garage shall be within 40 feet of the front property line of a lot applies only to a separate, detached building, and not to a room to be used for garage purposes, incorporated as an integral part of the main detached dwelling or mansion house": 88 A. 2d 658, at page 660.

In a recent Pennsylvania case, Novak v. Albrecht,

63 Lack. Jur. 13 (C. P. Lackawanna Co., 1960), plaintiffs challenged not defendants' right to incorporate a garage with their dwelling house, but rather the manner of doing so. A restriction in defendants' deed provided: "No garage shall be constructed, placed, or erected, or permitted to be built on said property in the front of any such private residence building, but a garage may be erected in the basement or in the rear of any such private residence". Defendants erected a garage and sun porch attached to the western *side* of their residence. The court dismissed a complaint in equity seeking to enjoin the structure, and Judge Nealon said:

"Plaintiffs request the Chancellor to conclude that this restriction prohibits the building of a garage anywhere on the premises except in the basement or in the rear of the residence. Such a conclusion is unwarranted, either under the express language of the restriction or by implication. If such a prohibition were intended by the scrivener, it should have been provided for in express language. We will not apply the limitation beyond the express language of the deed or its logical implication. To put it simply, the deed specifically mandates against construction of a garage in the front of the residence and this is the only mandate in the deed. The scrivener did not mention the side area of the residence and we will not conclude that this omission was intended to prohibit the owners from constructing a garage on the side of the residence. In Peirce v. Kelner, 304 Pa. 509, the Supreme Court stated the law as follows:

" 'Restrictions in deeds deal with property rights. They do not arise, nor can they be enforced, unless they appear in express terms. A subsequent clause to extend the scope of the operation of the restriction must be expressed in clear and explicit language. There is no such intention clearly expressed in this

deed: Satterthwait v. Gibbs, supra, [288 Pa. 428], at page 433. See South Church v. Madison Avenue Building Co., Inc., 163 N. Y. App. Div. 359' ".

It will be observed in the instant case that restriction no. 2 completely lacks even the minimal efforts, manifested in the Novak case, to dictate architectural detail. Nothing contained therein forbids the integration of an apartment with a garage.

Having explored the significance of separation and its converse, integration, in determining whether or not a structure is an "outbuilding", it is necessary to consider the second essential element in the meaning of that word, namely, that the subject building bear a servient or subordinate relationship to the dominant or principal building. A graphic illustration is found in Firth v. Marovich, 160 Cal. 257, 116 Pac. 729 (1911), cited by counsel for defendants. There, defendant owned a lot subject to the following restrictions: ". . . [N]o building whatever except a private residence with the customary outbuildings . . . shall be erected . . . on said premises . . . and that such building shall be used as a private residence only, and shall cost . . . not less than fifteen hundred (1,500.00) dollars, and shall be located not less than twenty (20) feet from the front or street line of said lot . . . and it is further agreed that no barn or shed, or other building shall be built or located closer than ninety (90) feet from the front or street line of said lot". Defendant erected an $800 one-story structure of rough boards located more than 100 feet from the street line, which she furnished and occupied as a residence. Plaintiff brought action to obtain a forfeiture of the title on the ground that defendant had violated the covenant. Defendant asserted that there was no violation because the structure in question was an "outbuilding". The lower court granted a nonsuit. On appeal, the Supreme Court of California reversed

this action, ordered a new trial, and Justice Sloss said:

"The word 'outbuilding' or 'outhouse' has been defined as 'a building adjoining or belonging to a dwelling house.' Bouv. L. D. *'It is the subserviency of it to the mansion house that* gives it the denomination of an outhouse.' State v. Brooks, 4 Conn. 446. An outbuilding is 'something which is to be used in connection with a main building.' Blakemore v. Stanley, 159 Mass. 6, 33 N.E. 689. The structure erected by Mrs. Marovich was not an outbuilding. *It was not an adjunct to any main building.* So far as the evidence and the admissions of the pleadings show, it was built for no other purpose and put to no other use than that of a dwelling. Viewed as a residence, it did not comply with the requirements of the deed as to cost and value": (160 Cal. at page 262, 116 Pac. at page 731; italics supplied.)

Our attention has been directed to two cases involving two-story garage-residence structures. In Archambault v. Sprouse, 218 S. C. 500, 63 S. E. 2d 459 (1951), cited by counsel for defendants, defendant owned a house and lot subject to the following restriction: ". . . No structure shall be erected . . . other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars and storage. *Buildings incidental to residential use may be erected*". (Italics supplied.) Defendant proposed to erect on the rear of his lot a two-story garage apartment, and plaintiff brought a suit in equity to enjoin him from doing so. The plans called for a two car garage, a large utility room and a stairwell on the first floor, and for a kitchen, bathroom, two bedrooms with closets, a living room and an enclosed porch on the second floor. The master found that this structure was "clearly intended to be an entirely independent and self-suffi-

cient living unit complete with all facilities and not in any way dependent on the original building at the front of the lot". On the basis of the findings, the court granted the injunction, and this action was affirmed by the Supreme Court of South Carolina. Justice Oxner said:

"Appellant contends that the structure in controversy may be properly classified as one 'incidental to residential use.' We do not think so. The word 'incidental' is defined in Black's Law Dictionary, Third Edition, as follows: 'Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose.' Undoubtedly this was the meaning contemplated in the restriction under consideration. Clearly the apartment on the second floor of this structure, a complete living unit having substantially the same accommodations as the main structure, cannot be said to be incidental to the use of appellant's residence. It was manifestly intended that only one dwelling house should be placed on each lot".

Inasmuch as the phrase "building incidental to residential use" is equivalent to the word "outbuilding" when applied to residential structures, the Archambault decision has a direct application to the instant case. One other decision, King v. Kugler, 197 Cal. App. 2d 651, 17 Cal. Reptr. 504, 92 A. L. R. 2d 872 (1961), involved a two-story structure consisting of a first floor garage and a second story room. An injunction was granted, not as the result of judicial interpretation of the word "outbuilding", but because the court ruled that a restriction in the deed limiting height of construction to one story applied to all types of structures.

From the foregoing authorities, it is apparent that proper disposition of this case turns upon the issue of

whether defendants' garage-apartment is an independent residential structure, as in the Archambault case, or whether it is subordinate and subservient to defendants' present dwelling house, with the result that it is an "outbuilding" proscribed by restriction no. 2. Before ruling definitely on this issue, we think the court should have the benefit of defendants' answer to the complaint, and such evidence as may provide a clear picture of the architectural detail and character of the structure in question.

ORDER

And now, March 2, 1966, preliminary objections in the nature of a demurrer are dismissed with leave to defendants to file an answer on the merits within 20 days after the filing of this opinion.